**CARUTHERSVILLE TOWING COM-
PANY, Appellant,**

v.

**JOHN I. HAY COMPANY, as Owner of
the M/V CHICAGO BRIDGE,
Appellee.**

No. 20863.

United States Court of Appeals
Fifth Circuit.

July 20, 1964.

Jack G. Carinhas, Jr., Cornelius G. Van
Dalen, New Orleans, La., Deutsch, Ker-
rigan & Stiles, New Orleans, La., of coun-
sel, for appellant.

Benjamin W. Yancey, Rufus C. Harris,
Jr., New Orleans, La., Terriberry, Rault,
Carroll, Yancey & Farrell, New Orleans,
La., of counsel, for appellee.

Before RIVES and JONES, Circuit
Judges, and BOOTLE, District Judge.

JONES, Circuit Judge.

The John I. Hay Company, owner of the
M/V Chicago Bridge, brought an action
in admiralty against the M/V Dorothy
I. Southern and her owner, Caruthersville
Towing Company, for damages resulting
from a collision in the Gulf Intracoastal
Waterway near Mile 200, not far from
Harvey, Louisiana. The Dorothy I.
Southern, a diesel powered towboat, was
moving westward on the morning of
March 27, 1960, pushing a rigid tandem
tow of four loaded tank barges. The
Chicago Bridge, slightly smaller than
the Dorothy I. Southern, was moving
eastward without a tow. The two ves-
sels were in communication by radio
before sighting each other. A starboard-
to-starboard passing was first arranged.
Subsequently a port-to-port passing was
agreed upon. The parties are not in ac-
cord as to which first proposed the port-
to-port passing, but it seems unimportant
since such a change was well understood
by both. The canal made a right-hand
bend for west-bound vessels of about ten
degrees. In maneuvering this bend, the
tow of the Southern swung toward the
south bank and collided with the Chicago
Bridge.

The master of the Southern, Captain
John N. Nicely, was not in the pilothouse
until after the vessels had met; but was
there soon after and took over the South-
ern. In his signed report to the Coast
Guard, Captain Nicely stated that the
Southern had radioed to the Chicago
Bridge that the tow had taken a sheer
and was not swinging fast enough for

a port passing. Again in the report Captain Nicely said that in his estimation the accident was caused principally by the tow sheering from a shoal, and the Chicago Bridge sheering off the underwater shoulder of the bank. Testimony was taken, documents were received in evidence and the parties rested. The proctors for the appellee inadvertently failed to offer Captain Nicely's report during the trial. It was offered subsequently and the court, having first rejected the offer, subsequently admitted it in evidence. Meanwhile Captain Nicely had died.

The district court found the Southern solely at fault, that its helmsman was guilty of improper navigation and violated Article 18, Rule 1, Inland Rules [1] and the Narrow Channel Rule, Article 25, Inland Channel Rules.[2] It was held that the Chicago Bridge was free from fault and not in violation of the General Prudential Rule, Article 27, Inland Channel Rules,[3] or the Special Circumstances Rule, Article 29, Inland Channel Rules.[4]

On this appeal it is contended, on behalf of the Dorothy I. Southern, that reversible error resulted from (1) the receipt in evidence of the Coast Guard report, (2) the finding of fault of the Southern, (3) the failure to find contributing fault of the Chicago Bridge, and (4) in the alternative, the failure to find mutual fault. But for the question of the admissibility of the Coast Guard report, this case would be one for a per curiam affirmance, and an approval of the district court's published findings, as required by McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, with the legal issues largely controlled by Atkins v. Lorentzen, 5th Cir. 1964, 328 F.2d 66. See John I. Hay Company v. M/V Dorothy I. Southern, D.C., 221 F.Supp. 538.

The report of the master of the Southern to the Coast Guard was required by law. 33 U.S.C.A. § 361. It was an official report and admissible against the vessel and its owners as an admission against interest. Cox v. Esso Shipping Co., 5th Cir. 1957, 247 F.2d 629; Matthews v. United States, 5th Cir. 1954, 217 F.2d 409, 50 A.L.R.2d 1187. The report was received in evidence while the cause was still undetermined and under consideration by the court. Receiving the report in evidence under such circumstances was within the discretion of the district court. Findley v. Lanasa, 5th Cir. 1960, 276 F.2d 907. The admissibility of the report, as one required by statute and made to a public body was not dependent upon the availability of the maker of the report to take the stand and explain away the damaging effect of its contents. See United States v. New York Foreign Trade Zone Operators, Inc., 2nd Cir. 1962, 304 F.2d 792.

There was no error in admitting the report in evidence. This being so, and there being no merit in the other contentions urged by the appellant as is shown, we think, by the opinion of the district court, its judgment is affirmed.

1. "When steam vessels are approaching each other head and head, * * * it shall be the duty of each to pass on the port side of the other * * *." 33 U.S.C.A. § 203.

2. "In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or midchannel which lies on the starboard side of such vessel." 33 U.S.C.A. § 210.

3. " * * * due regard shall be had to all dangers of navigation and collision, and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger." 33 U.S.C.A. § 212.

4. "Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences * * * of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case." 33 U.S.C.A. § 221.